**David A. Schuck,** OSB 993564, WSB 37285
E-Mail: dschuck@wageclaim.org
**Stephanie J. Brown**, OSB 030019, WSB 42030
E-Mail: sbrown@wageclaim.org
**Karen A. Moore**, OSB 040922, WSB 42476
E-Mail: kmoore@wageclaim.org
SCHUCK LAW, LLC
Attorneys at Law
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243
     Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CANAN SCHUMANN**, individually and on behalf of all similarly situated,<br>                      **Plaintiff,**<br>   v.<br>**AMAZON.COM SERVICES LLC; AMAZON.COM, INC.,** a foreign corporation,<br>                      **Defendants**. | Case No.   20-cv-01751-JR<br><br>**PLAINTIFF'S** *UNOPPOSED* **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Pursuant to Local Rule 7-1, Plaintiff's counsel has conferred in good faith with Defendants' counsel before submitting this motion. Defendants do not oppose this motion.

## MOTION

Pursuant to FRCP 23, Plaintiff, individually and on behalf of the proposed settlement class, moves the Court for preliminary approval of the Stipulation and Settlement Agreement of Class Action Claims ("Settlement Agreement" or "Agreement").[1] The Parties consent to Magistrate Judge Jolie A. Russo for the limited purpose of settlement approval, including preliminary and final approval.

---

[1] All terms herein have the same meaning and use as that in the Settlement Agreement. Nothing in this Motion, or anything filed in support of the settlement, is intended to change or alter the Settlement Agreement.

Page 1 - Plaintiff's *Unopposed* Motion For Preliminary Approval Of Class Action Settlement

Plaintiff requests that the Court enter the proposed Preliminary Approval Order, which:

1. Grants preliminary approval of the proposed Settlement Agreement as fair, reasonable and adequate;

2. Certifies, for settlement purposes only, a class of "all hourly Operation employees of Amazon working in Oregon during the period of April 16, 2019 through October 12, 2020";

3. Appoints Analytics Consulting, LLC as the Settlement Administrator;

4. Approves the form and procedures for notice to Class Members;

5. Authorizes a 60-day period for Class Members to file claims, request exclusion or file objections;

6. Appoints attorneys at Schuck Law, LLC as Class Counsel;

7. Appoints Plaintiff as the Class Representative;

8. Requests that the Court schedule a Final Approval Hearing no earlier than October 1, 2023 or reasonably thereafter, for the Court to consider Plaintiff's motion for final approval of the settlement, award of attorney fees and costs, and service award, consider and hear class member objections (if any), and entry of the proposed Order and Final Judgment Approving Settlement of Class Action.

In support of this motion, Plaintiff relies on the court file, the Settlement Agreement filed contemporaneously with this motion, and the declarations of David A. Schuck, Stephanie J. Brown and Karen A. Moore filed with this Motion.

## POINTS AND AUTHORITIES

**1. Procedural History**

On October 12, 2020, Plaintiff filed this case alleging that the class members were not paid all wages based on hours worked under Oregon State law. This case followed after the class action *Swearingen v. Amazon.com Services, Inc. et al*, case no. 3:19-cv-01156-JR. Defendants, in their Answer, denied any and all wrongdoing and asserted multiple affirmative defenses. During the case and settlement negotiations, the Parties defended their interests and advocated their respective positions.

This case was stayed pending the litigation in *Swearingen*. *Swearingen* was pending with

the Ninth Circuit on a petition for interlocutory appeal. While on appeal, the Parties in *Swearingen* reached a settlement that the Court has preliminarily approved. This settlement is similar to that in *Swearingen*, but takes into account the different class period and claims alleged.

**2.  Summary of Settlement**

As consideration for the Release of Claims, Defendants have agreed to pay a Maximum Settlement Amount of $16,000,000.00. Under the Settlement, there are two types of payments: a guaranteed payment to all Class Members ("Group A"), and a claimable payment to a subset of Class Members ("Group B"). Those groups are:

> Group A: All Class Members shall receive a Settlement Award of $48.70 for the alleged unpaid wages in the case without the need to submit a Claim Form.
>
> Group B: Those Class Members who submit a Claim Form and whose employment with Amazon ended during the Class Period shall be eligible for $685.00 for the alleged penalty wages in the case, which shall constitute part of their respective Settlement Awards. Class Members in Group B are also included in Group A.

Settlement Agreement § 4.3. The Settlement Agreement requires Defendants to pay a Settlement Award to all class members in Group A and an additional amount to Class Members in Group B who make a valid and timely claim to reflect alleged penalty wages.

In addition to the Settlement Awards to Class Members, the Settlement provides:

1.   $150,000.00 for administrative costs to the Settlement Administrator;

2.   $5,333,333.33 for a common fund award of attorney fees to Class Counsel;

3.   $4.423.00 for costs and disbursements to Class Counsel;

4.   $20,000.00 as a Service Award to Plaintiff as Class Representative; and

5.   all employer-side taxes on the Settlement Awards.

*Id*. No Class Member's recovery will be reduced based on the number of claims, or payment of attorney fees and costs, service award to Plaintiff, or for administration.

The Settlement further protects Class Members by including a "Minimum Settlement Amount" that is a guaranteed amount Defendants will pay, without possibility of reversion, consisting of $5,333,333.33 to Settlement Awards to Class Members and Approved Claimants,

plus items above. Settlement Agreement § 4.3. Amounts less than the Minimum Settlement Amount will be incorporated within the second distribution to Group A to all Class Members, if practical, or otherwise shall be distributed to a *cy pres* recipient, Northwest Workers Justice Project, as unclaimed funds. Settlement Agreement § 4.3.8.

The Settlement also provides for a service payment to Plaintiff of $20,000.00 as the Class Representative. Under the proposed Settlement and subject to final approval, Plaintiff will receive a service award of $20,000.00. Unlike putative class members, the Class Representative actively participated in the litigation. Plaintiff was subjected to the burdens and risks of litigation on behalf of the class. Without objection by Defendants, the named Plaintiff earned the service award allocated in this Settlement. Service awards can range from several hundred to many thousands of dollars. In *Ingram*, the Court approved incentive awards of $300,000 for each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class. *Id. See also, Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294 (N.D. Cal. 1995) (approving $50,000 participation award). Service awards are justified by the increased duties, inconvenience and risk undertaken by the Plaintiff as the Class Representative.

The Settlement provides $150,000.00 for administration expenses. Any portion of that amount that is not awarded by the Court or necessary for administration will be distributed to Group A as the guaranteed funds, or if after the second distribution to Group A, treated as Unclaimed Funds. Settlement Agreement § 4.3.8.

Finally, any unclaimed or residual funds from the Minimum Settlement Amount will be allocated to the Northwest Workers' Justice Project, a local 501(c)(3) nonprofit organization dedicated to employee rights and education. This would include any guaranteed funds allocated to Class Members in Group A who are unreachable, Settlement Awards that are not deposited or negotiated within 60 calendar days after issuance, any unspent portion for Settlement Administration that cannot feasible be redistributed to Group A, and any funds remaining as a result of fractions of cents. The allocation of residual funds to a cy pres organization in the

Settlement would be otherwise unavailable at trial. The residual funds will (indirectly) benefit the class through the ongoing work of Northwest Workers' Justice Project.

In return for the above consideration, Plaintiff and Class Members, who do not request exclusion, will release all "Released Claims" limited to any wage and hour claims that are or could have been alleged in this case. Settlement Agreement § 2.32 and 4.2. In further consideration of this Settlement, Plaintiff will provide a General Release of Claims to Defendants and the Released Parties. Settlement Agreement § 4.2.2 & 4.2.3.

### 3. Stipulation and Settlement Agreement of Class Action Claims

Before a class action can be compromised, the Court must approve a class action settlement and notice to the class members. Fed. R. Civ. P. 23. This Settlement warrants approval because it provides real and tangible benefits to Class Members without further delay or risks of litigation. It is difficult to compare the Settlement to the amount that the Class might have obtained if it had been litigated through certification and liability at trial. Without this Settlement, there are substantial risks and uncertainties surrounding this litigation. This Settlement will resolve all claims in this case. Therefore, preliminary approval is warranted.

#### 3.1. Certification of Settlement Class Action

To certify a settlement class, Plaintiff must satisfy Rule 23. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1019 (9th Cir. 1998), *overruled on other grounds Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23 provides district courts with broad discretion to certify a class. See *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

The Court can certify a settlement class where the settlement meets the requirements of Rule 23(a) – numerosity, commonality, typicality and adequate representation – and one of the requirements of Rule 23(b). *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012). Before granting preliminary approval, the Court should determine that the proposed Settlement Class is a proper class under Rule 23. See MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "When, as here, the parties have entered into a settlement agreement before the district court certifies the

class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Rule 23 also requires, implicitly, that the members of the proposed class be ascertainable based on objective criteria. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.,* 65 F.Supp.3d 1046, 1064 (D. Or. 2014). Here, the Class Members will be identified from Defendants' employment records of those hourly Operation employees of Defendants who worked in Oregon during the class period of April 16, 2019 through October 12, 2020.

Defendants have agreed to not oppose Plaintiff's request for certification for settlement purposes. For settlement purposes, the Court should grant certification based on the Rule 23 factors.

### 3.2. Plaintiff Meets the Requirements of FRCP 23(a)

Plaintiff has satisfied the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23.

#### 3.2.1. Numerosity (FRCP 23(a)(1))

In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc*., 294 F.R.D. 585, 590 (D. Or. 2013). Numerosity is met based on Defendant's employment and payroll records, as there are approximately 22,035 individuals who qualify as Settlement Class Members. Settlement Agreement § 2.16.

#### 3.2.2. Commonality (FRCP 23(a)(2))

To satisfy the commonality requirement, Plaintiff must show that Class Members suffered the injury giving rise to "their claims must depend upon a "common contention … of such a nature that it capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350. Class Members need not have every issue in common: commonality requires only "a single significant question of law or fact" in common. *Mazza*, 666 F.3d at 589. There are several questions of law and fact common to the Settlement Class, including:

    1.    What Defendants' rounding policies were;

2. Whether the nonpayment of time under those policies is actionable under Oregon statutes;

3. Whether Oregon wage and hour law recognizes the *de minimis* doctrine;

4. Whether and to what extent Defendants' rounding payments were willful; and

5. What is the proper calculation of the penalty wages under ORS 652.150.

Thus, Plaintiff maintains that the commonality requirement is satisfied.

### 3.2.3. Typicality (FRCP 23(a)(3))

Typicality requires that that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards," the "representative's claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (quotation marks omitted.). Plaintiff's claims are typical of those of the Settlement Class because, like all Settlement Class Members, Plaintiff was employed by Defendants in Oregon and was paid via the same system as all Settlement Class Members. Thus Plaintiff's claims are typical of the class.

### 3.2.4. Adequate Representative (FRCP 23(a)(4))

For certification, the Court must find that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement raises two questions: 1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and 2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members. Plaintiff has been involved and participated in the case, including being present for mediation and subsequent settlement negotiations. Plaintiff has

no interest antagonistic to the Class. There is no conflict of interest in this action, and there is no disagreement between Plaintiff's interest and those of the class.

Additionally, Class Counsel and Plaintiff conducted a thorough investigation, vigorously prosecuted the claims alleged, and negotiated a settlement that provides prompt and valuable relief to Settlement Class Members. Class Counsel have dedicated substantial resources to the investigation and prosecution of the claims at issue, and demonstrated their knowledge of Oregon wage and hour laws.

Class Counsel have significant experience in litigating class action wage and hour cases. Declarations of David A. Schuck, Stephanie J. Brown and Karen A. Moore supporting Schuck Law as Class Counsel. Attorneys Schuck, Brown and Moore have over 60 combined years of experience representing over 110,000 class member / employees in wage and hour class actions. Schuck Decl. ¶ 5, Brown Decl. ¶ 6 and Moore Decl. ¶ 5.

Therefore, the Court should appoint Plaintiff as the Class Representative and Plaintiff's Counsel to serve as Class Counsel for the Settlement Class.

### 3.2.5. Ascertainability

Ascertainability, although "not expressly required" by Rule 23, is a threshold requirement for class certification. *Ott*, 65 F. Supp. 3d at 1064. A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.,* 468 F. App'x 768, 770 (9th Cir. 2012) (quotation marks omitted). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231,237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 3:3 (5th ed.)). This does not require that "every potential member ... be identified at the commencement of the action." *Id*. (quotation marks omitted). The Class Members are identified from Defendants' payroll records, and thus this requirement is met.

### 3.3. Plaintiff Meets the Requirements of FRCP 23(b)

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." A class action is superior where it serves the primary goals of Rule 23, namely, "economies of time, effort, and expense," without sacrificing fairness. *Amchem*, 521 U.S. at 615 (quotation marks omitted); *see also Abdullah,* 731 F.3d at 963-64.  The focus of this inquiry is on "*questions* common to the class" – Plaintiff need not "prove that predominating question[s] will be answered in their favor." *Amgen Inc., v. Conn. Ret. Plants & Tr. Funds,* 568 U.S. 455, 459, 468 (2013) (emphasis in original).

Settlements, such as this one, squarely advance the efficiency and fairness concerns underlying class actions because many individual claims would be so small as to make it economically infeasible for employees to pursue them alone.  A class action is superior to other available methods for fair and efficient adjudication of the controversy because joinder of all Class Members is impossible.  Repeated litigation of individual claims would waste of judicial resources.

This Settlement eliminates any individual question regarding the amount of damages by providing a reasonable and set amount for unpaid wages to all of Group A and allows class members in Group B to submit a claim form for additional amounts if their employment ended during the Class Period.  The questions of law and fact common to all Class Members, as described above, predominate over any individual issues such as the nature and extent of damages. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individualized question and does not defeat class action treatment.")

The purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 722 (9th Cir. 2010).  As damages suffered by individual members of the Settlement Class may be relatively small, the expense and burden of individualized litigation would make it impossible for all Class Members to individually redress the harm.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.

1982), *cert. denied*, 459 U.S. 1217 (1983).

This Settlement provides a reasonable recovery for each Class Member, especially in light of the potential recovery if litigated. The Court should preliminarily approve the Settlement and certify the Settlement Class pursuant to Rule 23(b)(3).

4. **Standard for Preliminary Approval of Class Action Settlement**

The Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." MANUAL FOR COMPLEX LITIGATION § 21.633 (4th ed.) The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range reasonableness." *Id*. at § 40.42. The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Courts apply "an initial presumption of fairness when reviewing a proposed settlement where: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004) (internal citation omitted). Preliminary approval is merely the prerequisite to giving notice so that class members have the opportunity to be heard at the fairness hearing. *In re Initial Public Offering*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (fairness hearing affords class members "an opportunity to present their views of the proposed settlement"). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

To assess whether the proposed class settlement is fair, the court considers the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed

settlement.

*Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004); *In re Bluetooth*, 654 F.3d at 946. However, the court cannot fully assess all of the fairness factors until after notice has been sent to the class members and opportunity to be heard at the final approval hearing. Thus, "a full fairness analysis is unnecessary at this stage." *In re Zynga Inc. Sec. Litig.*, case no. 12-cv-04007-JSC, 2015 WL 6471171 at *8 (N.D. Cal. Oct. 2015) (internal quote omitted).

At the preliminary approval stage, the proposed settlement need only be potentially fair. *Id*. Courts may preliminarily approve a settlement and direct notice to the class if "'[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; [2] has no obvious deficiencies; [3] does not improperly grant preferential treatment to class representatives or other segments of the class; [4] falls within the range of possible approval." *In re Zynga*, 2015 WL 6471171, at *8 (internal quote omitted); *accord In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (same). Courts lack the authority to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026. Ultimately, the "decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276.

As mediator, Teresa Wakeen helped each party critically evaluate all the factors and risks of litigation to reach a settlement. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Federal Express Corp.*, case nos. C 03-2659 SE, C 03-2878 SI, 2007 U.S. Dist LEXIS 99066, at *4 (N.D. Cal. Apr. 13, 2007). *See also, Alexander Mfg. v. Ill Union Ins. Co.*, 666 F.Supp.2d 1185, 1201 (D. Or. 2009), *Fireman's Fund Ins. Co. v. Security Nat'l Ins. Co.*, case no. 99-6274, 2003 U.S. Dist. LEXIS 27840, at *15-16 (D. Or. Mar. 21, 2003).

Given the procedural posture of this case, the settlement was reached after exchange of information for settlement purposes, evaluation of risks and benefits of continued litigation, and significant settlement negotiations. The attorneys Schuck, Brown and Moore at Schuck Law, LLC are experienced in litigation of class action wage and hour cases, with a combination of

over 60 years of class action experience representing employees. Schuck Decl. ¶ 3, Brown Decl. ¶ 4 and Moore Decl. ¶ 4. This settlement was reached after arm's length negotiations. Schuck Decl. ¶ 19, Brown Decl. ¶ 12 and Moore Decl. ¶ 15.

This Settlement avoids the many legal and factual delays and obstacles that may prevent Plaintiff and Class Members from obtaining monetary relief. It also satisfies Oregon public policy to promptly pay wages to workers: "central purpose [of the wage statutes] to be that of assuring [employees], usually with a disparity of economic power existing between himself and his [employer], shall be assured of prompt payment for his labors when the relationship is terminated." *Lamy v. Jack Jarvis & Co.*, Inc. 281 Or 307, 313 (1978). Based on the risks of proceeding forward through trial and any appeal, Plaintiff, upon recommendation of Class Counsel, agreed to resolve the pending case through this settlement.

## 5. Preliminary Approval of Settlement

As many district courts have identified, analyzing a class action settlement begins with a presumption that a class settlement is fair and should be approved if it is the product of arm's length negotiations conducted by capable counsel with extensive experience in complex class action litigation. See 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002). Each of these factors is present here: Class Counsel has extensive experience in class action litigation (Decls. Schuck, Brown and Moore), and the Settlement was reached only after ample investigation and extensive arm's length negotiations about the Settlement terms.

### 5.1. The Settlement is non-collusive

The Ninth Circuit has identified three signs of potential collusion in a class action settlement: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply rewarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorney fees separate and apart from class funds without objection by defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Bell v. Consumer Cellular, Inc.*, case no. 3:15-cv-00941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017).

Here, the proposed Settlement bears none of the hallmarks of collusion.

To analyze a settlement for disproportionate distribution, consistent with *In re Bluetooth*, the Court compares the payout to the class (both actual and expected) to the unopposed claim of fees by class counsel. *See, e.g., Harris v. Vector Mktg. Corp.*, 2011 WL 4831157, *6 (N.D. Cal. Oct. 12, 2011). Class counsel will seek no more than one third of the gross Settlement. That is a reasonable portion of the expected payout. *Boeing Co. v. Van Gernert*, 444 U.S. 472, 480 (1980) ("To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar. We thus reverse and remand," citing *Boeing*.).

Here, Class Counsel will request no more than 1/3 of the total $16 million as the Maximum Settlement Amount as attorney fees. The Maximum Settlement Amount makes available to the Class over $10,400,000.00. [2] Settlement Agreement § 4.3. Until all claims are made by Class Members in Group B, Class Counsel cannot determine the actual percentage the attorney fees would be as compared to the claims. Obviously, the more Class Members who submit claims, the lower the percentage of attorney fees. The attorney fees will not reduce any amounts available to Class Members. Assuming a complete payout, Plaintiff's proposed attorney fee award compared to amounts reserved for Settlement Awards to Class Members is approximately 50% and is comparable to the ratios approved by other district courts in this Circuit as non-collusive. *Compare, e.g. Norris v. Mazzola,* case no. 15-CV-04962-JSC, 2017 WL 6493091, *9 (N.D. Cal. Dec. 19, 2017) (fee request of $858,751, which was 80% of the class payout of $1,076,255, "does not suggest collusion"); *Shvager v. ViaSat, Inc.,* case no. CV-12-10180-

---

[2] This is the Maximum Settlement Amount of $16 million, less amounts for administration, service award, costs and attorney fees. Settlement Agreement § 4.3.

Page 13 - Plaintiff's *Unopposed* Motion For Preliminary Approval Of Class Action Settlement

MMM-PJWx, 2014 WL 12585790, *13 (C.D. Cal. Mar. 10, 2014) (when requested fees of $150,000 was 70% of $215,000 class award, "the first sign of collusion is not present here"); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964,984 (E.D. Cal. 2012) ("The court estimates that the settlement pool, particularly with the reduction in the fee award to class counsel, will exceed the fee award of $1,160,000. These small disparities are in sharp contrast to those in recent cases like *Bluetooth*"); and *Harris v. Vector Mktg. Corp.,* case no. C-08-5198-EMC, 2012 WL 381202, *5 (N.D. Cal. Feb 6, 2012) ("fees are now on par with the money to the class and the cy pres combined (roughly 1:1). The Court is not faced with a situation where fees are disproportionate to the class award as in *Bluetooth*."), with *In re Bluetooth*, 654 F.3d at 947 (noting that "award of attorney fees up to eight times the monetary cy pres relief afforded the class" was discorporate, especially given zero monetary relief directly to the class) and *Harris v. Vector Marketing, Corp.*, case no. C-08-5198, 2011 WL 4831157 (N.D. Cal Oct. 12, 2011) (disapproving settlement awarding class counsel $4 million, when the expected payout to the class was approximately $1 million).

Plaintiff's counsel agreed to represent the Plaintiff and class on a contingent fee basis. Schuck Decl. ¶ 21, Brown Decl. ¶ 13 and Moore Decl. ¶ 16. In light of those risks, potentially years of litigation and possibly appeal, the contingent nature of the representation, and benefit ultimately obtained for the class through this settlement, warrants preliminary approval. As part of the Settlement, Defendants agree to the Settlement Amounts, and do not oppose the requested Attorney Fees and Cost Award, as part of the total Maximum Settlement Amount. Settlement Agreement § 4.3.

For preliminary approval, the Court is not making final decision as to the award of attorney fees and costs. Instead, the Court is providing Class Members with notice of the terms of the settlement, including award of attorney fees and costs. The allocation of the Maximum Settlement Amount provides that Plaintiff will receive the same equal share as the Class and Subclass members and that Class Counsel's fees must be approved by the court.

The proposed Settlement contains a provision that Amazon will not oppose Class

Counsel seeking up to one third of the Settlement fund as attorney fees. However, this is not a classic "clear sailing" provision, as fees awarded are paid by the Settlement Fund, not separately by Amazon. Further, if the Court were to award less than the requested amount of attorney fees to Class Counsel, any fees not awarded by the Court will go to the Class members; they will not revert to Defendants. "As the Ninth Circuit has noted, moreover, the inference of collusion drawable from a clear sailing provision is reduced when the agreement lacks a reversionary or 'kicker provision'." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438,458 (C.D. Cal. 2014), *citing Bluetooth*, 654 F.3d at 949.

The parties reached this Settlement after mediation by respected Seattle Mediator Teresa Wakeen. At mediation on November 18, 2022, Ms. Wakeen helped each party critically evaluate all the factors and risks of litigation to reach a settlement. The parties continued their negotiations after formal mediation and after the Court's ruling in *Buero v. Amazon*, 370 Or 502 (2022). The process by which this Settlement was reached further weighs against any indication of collusion. *In re PNC Fin. Group, Inc.*, 440 F.Supp.2d 421, 430 (W.D. Pa. July 13, 2006) (finding that partial settlement of large securities fraud case negotiated over several months with assistance from retired United States District Judge Nicholas Politan "in itself significantly dispels any concern of collusion"); *In re Zynga*, 2015 WL 6471171, at *9 (finding proposed settlement of class action was not collusive where parties engaged in discovery, were represented by experience counsel, and used neutral mediator).

**5.2. There are no obvious deficiencies**

The proposed Settlement contains no obvious deficiencies that would preclude preliminary approval. The attorney fee allocation is not unreasonably high, and there is no preferential treatment for the Class Representative.

Here, counsel is seeking an award of no more than one third of the Maximum Settlement Amount, which is above the generic 25% "benchmark" typically considered a reasonable fee in the Ninth Circuit. *In re Bluetooth*, 654 F.3d at 942 (holding that courts may award a percentage of the common fund and that 25 percent is typically a reasonable fee). However, it is in line with

common-fund awards in similarly complex wage-and-hour class action settlements in this Circuit. "Several courts in the Ninth Circuit have held in wage and hour class actions that a 30% or higher award is appropriate." *Bell v. Consumer Cellular, Inc.,* case no. 3:15-CV-941-SI, 2017 WL 2672073, *12 (D. Or. June 21, 2017), *citing Miller v. CEVA Logistics USA, Inc.,* case no. 2:13-CV-01321-TLN, 2015 WL 4730176, *8 (E.D. Cal. Aug. 10, 2015) (noting that courts in the Ninth Circuit "usually award attorneys' fees in the range of 30-40% in wage and hour class actions" in similar cases). Courts have commonly approved awards of approximately 33% in such cases. *See, e.g., Morris v. Lifescan, Inc.,* 54 F. App'x 663, 664 (9th Cir. 2003) (affirming award of 33% of $14.5M); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373,379 (9th Cir. 1995) (affirming award of one third of $12M); *Slayman v. FedEx Ground Package System, Inc*., case no. 3:14-cv-01663-HZ at ECF. 71 (D. Or. Oct. 21, 2016) (awarding all of requested 30% of $15.5M); *Davidoff v. R.L.K. and Company*, Multnomah County Case No. 19CV45422 (Oct. 5, 2021 Order by Judge Lucero approving one-third attorney fee to this same class counsel in $4.5 million class action settlement); *Bell, supra, citing Deaver v. Compass Bank*, case no. 13-CV-00222-JSC, 2015 WL 8526982, *9 (N.D. Cal. Dec. 11, 2015); *Lusby v. GameStop Inc.*, 2015 WL 1501095, * 4 (N.D. Cal. Mar. 31, 2015); *Burden v. SeleciQuote Ins. Servs.*, 2013 WL 3988771, *5 (ND Cal Aug 2, 2013); *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431,450 (E.D. Cal. 2013); *Franco v. Ruiz Food Prod., Inc*., case no. 1:10-CV-02354-SKO, 2012 WL 5941801, *18 (E.D. Cal. Nov. 27, 2012); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012); and *Romero v. Producers Dairy Food Inc*. , 2007 WL 3492841, * 4 (E.D. Cal. Nov. 14, 2007).

Additionally, as noted above, there is no clear sailing provision, and requested fees must be approved by the court. Accordingly, the proposed Settlement lacks obvious deficiencies that would preclude preliminary approval.

### 5.3. There is no preferential treatment

The proposed Settlement does not provide preferential treatment to Plaintiff or segments of the class. As noted above, the proposed allocation compensates all Class Members equally

with the Class Representative in that they will receive an equal share of the Settlement based on their membership Group A and B. The lack of preferential treatment for Plaintiff weighs in favor of preliminary approval. *In re Zynga*, 2015 WL 641171, at *10 (preliminary approval of class settlement where the plan of allocation "distributes the funds without giving undue preferential treatment to any class members").

At the Final Approval hearing, Class Counsel will seek a reasonable service award for the Class Representative to compensate him for the time that he has devoted to pursuing this litigation for the benefit of all of the other Class Members. But requests for reasonable service awards are typically granted by the courts where, as here, the Class Representative's involvement in the case has been significant, the duration of the case has been long, and the Settlement benefits are substantial.

### 5.4. The proposed Settlement is within the range for approval

The court must examine whether the Settlement "falls within the range of possible approval" by considering "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F.Supp. 2d at 1079-80. The adequacy of the amount of the Settlement must be considered in light of the strength of Plaintiff's case and the risks in pursuing further litigation. *See Bell*, 2017 WL 2672073, at *5 ("It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (internal quotation omitted). Importantly, the proposed Settlement does not compromise the alleged claims at issue in *Buero v. Amazon*, case no. 3:19-cv-00974-MO / 9th Cir. 20-35633.

There are also risks to the Class Members given the complexity inherent in this case. The Class faces legal challenges at the class certification level, summary judgment, trial, and appeal, which may result in little or no recovery. Thus, the proposed Settlement is well within the applicable settlement range.

### 5.5. The plan of allocation is fair.

"Approval of a plan of allocation of settlement proceeds in a class action ... is governed

by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008) (*quoting In re Oracle Sec. Litig.*, case no. C-90-0931-VRW, 1994 WL 502054, at* 1-2 (N.D. Cal. June 16, 1994)). "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Id.*

The plan for allocation of the Settlement Amount is fair and follows the plan this court already approved in *Swearingen*. While the proposed Settlement Agreement fully details administration, the Notice to Class Members provides the specific allocation of the Maximum Settlement Amount. This provides clear information to the Class Members to make informed decisions of their rights and remedies provided by this Settlement. The allocation of settlement funds treats Class Members evenly – i.e., all Class Members will receive an equal share as members of Group A, and those Class members who also qualify for Group B will receive their equal share of the claimable funds if they submit a claim. This equitable treatment of Class Members within the two groups of potential damages weighs in favor of preliminary approval. *See, e.g., In re Regulus Therapeutics Inc. Sec. Litig.*, case no. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020) ("The allocation formula used in a plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel. A plan which fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue should be approved as fair and reasonable.") (internal citations and quotations omitted).

### 5.6. The form of Notice and Notice Procedures are fair

If the court certifies a class under Rule 23(b)(3), the court "must direct to class members the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs the form and content of a proposed notice. Although notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not

required. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The proposed Notice procedures in this Settlement are comprehensive and detailed for the purpose of alerting Class Members to this settlement and advising them of their rights. Settlement Agreement § 4.7 (Notice of Class Action Settlement and Requirements), 4.8 (Settlement Website), 4.9 (Claim Forms), and 4.10 (Objections or Exclusions from the Class Action Settlement).

The proposed Notice clearly provides Class Members with the Response Deadline to submit a claim form, request exclusion, or file objections. Settlement Agreement exhibits 1 and 2. It advises Class Members on the nature of this case, the allocation of the Maximum Settlement Amount and the guarantee of the Minimum Settlement Amount. Based on their employment history in Defendants' records, Class Members are in Group A, with the potential of being in Group B depending on when their employment with Defendants ended. Settlement Agreement § 4.3.1.

The Notice contains all of the information necessary for Class Members to make informed decisions. The Notice provides simple options for those in Group B to submit a Claim Form. The Notice clearly provides the date and time of the Final Approval Hearing if a Class Member wants to attend, but advises them that they are not required to attend.

Further, the full Release of Claims is provided in the Notice, instead of just a summary. Class Members are advised that they will be bound by the Released Claims, subject to the Court's final approval, unless they request exclusion from the case. The Notice also provides them with a point of contact for questions.

The Settlement Administrator will set up a website specifically for this Settlement that will include critical documents, such as the Notice. Settlement Agreement § 4.8. The Notice and Claim Form will be mailed and emailed to each Class Member at their last known address. If the mailing is returned as undeliverable for any class member, the Claims Administrator attempt to locate a new address for the class member and remail the Notice. The Settlement also provides for a reminder text to be sent 30 days into the notice period providing Class Members

with the settlement website.  This satisfies the best notice practicable.

The Notice and procedures satisfy the requirements of due process.  Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Settlement Class.

## 6. Conclusion

The proposed Settlement was reached after significant and arms' length negotiations. The Settlement provides for the best notice practicable to all Class Members, sufficient time for Class Members to make a claim if part of Group B, request exclusion or file an objection. Plaintiff requests that the Court preliminarily approve the settlement and enter the proposed Order certifying the settlement class, appointing Analytics Consulting as Claims Administrator, approving the proposed notice and claim form, appointing the Plaintiff as Class Representative, and appointing Schuck Law as Class Counsel.  Plaintiff also requests that the Court schedule the Final Approval Hearing for on or after October 1, 2023.

DATED:  April 24, 2023.
                                                  Schuck Law, LLC
                                                    /s/ David A. Schuck
                                                DAVID A. SCHUCK, Esquire
                                               OSB # 993564
                                               (360) 566-9243
                                               Attorney for Plaintiff